Spear, J.
The ground of reversal was that there was a defect of parties plaintiff, and hence the common pleas erred in not sustaining the second g-round of demurrer.
In support of this holding it is argued that the case is controlled by section 5007, Revised Statutes, which requires that “Parties who are united in interest must be joined, as plaintiffs or defendants.” That a contract by one person with two or more jointly does not comprehend or involve a contract with either separately, and a defendant, who has made but one contract, or incurred a single liability, obviously has the right to require the whole case to be disposed of in one action. And, applying these considerations to the case at bar, inasmuch as R. W. Duncan was a party to the contract of purchase he was united in interest with the plaintiff, and was a necessary party to the action, because Willis, having made a single contract, incurred only a single liability, and hence had the right to have R. W. Duncan broug-ht in so that the whole question of liability might be disposed of in one action.
The general rule undoubtedly is that in a suit for the breach of a joint contract all the parties to the contract must be joined as parties in the action, and if any refuse to become plaintiffs they may be made defendants. This rule rests not only upon the ground that the defendant may well ask that his entire liability be determined in one *439 action, but upon what seems to us a reason equally good, viz.: That if several were permitted to bring several actions for one and the same cause, the court would be in doubt for which of them to give judgment. But there are exceptions to the rule.
The allegations of the petition in this case present a condition differing from the ordinary cause of action for breach of a joint contract, and this leads to the inquiry whether the case comes within the ordinary rule or falls within some recognized exception. A defendant may, with great propriety insist, where he has made a sale to a number of purchasers who, for anything appearing to the contrary, are to use the property jointly, or dispose of it on joint account, that he should not be subjected to damages by two or more actions, for, in such case, it may fairly be said that he did not contemplate, and ought not to have contemplated, liability to each separately. He may, also, insist that the right of action be confined to the exact persons for whose benefit his contract was made. So it was held in Edwards v. Owen, 15 Ohio, 500, that while an action on the case might be maintained against a debtor for representing’ himself insolvent and thereby inducing his creditor to discharge a note for less than its value, yet it was error to instruct a jury that proof of false and fraudulent declarations thus made to other creditors would sustain a declaration counting upon representations made directly to the plaintiff. And in McCracken v. West, 17 Ohio, 16, it was held that “if a person write a letter to another, desiring him to introduce the bearer to such merchants as he may desire, and describing him as a man of property, and the person having such letter do not deliver it to the *440 person to whom it is directed, but use it to obtain credit elsewhere, the person so giving the credit cannot maintain an action for deceit, though the representations in the letter are untrue.” Also, in Wells v. Cook, 16 Ohio St., 67, it was held that where the owner- of a flock of sheep, apparently sound and healthy, but known to him tobe diseased with a contagious malady, falsely and fraudulently represents them as sound and healthy to one known to be acting as the agent of a third person, and the agent confiding in such representations, buys them for his principal with the avowed purpose of mingling them with a large flock then belonging to the principal, whereby the united flock was infected, and, the agent and principal being-still unaware of the existence of the disease, the agent buys the united flock from the principal and suffers damage from the continued spread of the disease, he could not maintain an action against the seller for the deceit, the representations not having been made to him to induce him to act upon them in any manner affecting his own interests.
In these cases it is manifest that there was an entire lack of privity between the several complaining parties and those accused of deceit, • and hence there could be no right of action. Whatever liability would naturally attach to the deceit complained of, one thing- was plain, and that was that the right to be compensated did not inure to the complaining parties. It could not be said in either ease that the person guilty of fraud ought to have contemplated injury to the person complaining.
Not so, however, in the case at bar. The plaintiff, being a party to the contract, was one of those necessarily within the contemplation of the defendant as likely to be injured by the fraud. Was he *441 so related to the transaction as that the defendant should be held to have contemplated injury to him separate and distinct from any possible injury to the other purchaser? To determine this let us look at the contract.
The petition discloses that Willis, having knowledge that the plaintiff and his brother were desirous of purchasing, each for his own separate use, a number of head of light feeding hogs, represented to them that he had one hundred hogs to sell of the kind and quality desired which were sound, healthy, and free from disease, and for which he had paid $5.00 per 100 pounds, but declined to sell in separate lots; he would sell the Duncans the entire lot and they could divide them to suit themselves. Relying upon these representations the brothers purchased the one ■ hundred hogs, paying $5.12^ per 100 pounds, the plaintiff and his brother each to have fifty head of the hogs as his separate and individual property, and to feed separately on their respective farms. On the same day the hog's were divided in accordance with the agreement, and plaintiff took his fifty at once to his own farm, where some of them died on the same day by reason of hog cholera. They had been exposed to this disease and were infected with it at the time of the sale, all of which was known to the defendant, who had in fact purchased them as diseased hogs, and for a much less sum than $5.00 per 100 pounds. Not only did plaintiff lose the diseased hogs which died, but the disease was communicated to his other hogs, and he was greatly injured thereby.
It would seem that this contract of purchase, though joint in form, and based upon a consideration moving jointly from the two, was in spirit and *442 essence, so far as it is involved in the present controversy, a separate contract as to each,, and that the rights acquired under it by the purchasers were separate and distinct. That is to say, so far as the agreement of the sale, payment of purchase price, and delivery were concerned, it was a joint contract, but the representations, and the agreement of warranty entailed obligations for the performance of several duties to each. The contract belong’s to that class which, although the ag'reement, in its inception, be entire, the performance is several, and, therefore, the contract in its nature divisible. This depends, as said by Lord Ellenbo rough, in Ritchie v. Atkinson, 10 East, 295, “not on any formal arrangement of the words, but on the reason and sense of the thing, as it is collected from the whole contract.”
To arrive at a just conclusion we need but apply the ordinary rule that the damages to which the plaintiff is entitled are such.as might have been supposed by the parties to be the natural result of a breach of the contract; such as might have been in their contemplation when the contract was made, having in mind the circumstances, and all the circumstances, known to them when they dealt. To urge,,in the face of this well established rule, that the obligation incurred by the representations and warranty was a joint obligation, and not a several one, is to contend against the plain import of the acts of the parties; it is,indeed, to say that no obligation at all was contemplated, and none incurred. This follows from the very nature of the circumstances. The parties could not have contemplated consequences involving joint damage to both purchasers because there could be no joint interest as to damages which might accrue from *443 the deceit, for the property purchased, was, by the terms of the contract, and from circumstances as well known to the defendant as to the plaintiff, to be divided at once, and thence used separately, and neither brother could have an interest in the damages sustained by the other. In such case it seems reasonable to hold that the contract is to be moulded according to the several interests of the parties, and each recover only for a breach so far as his own interest extends, the rule being that where the legal interest and cause of action is several, each may and should sue separately for the particular damage resulting to him individually, although the contract be in its terms joint. The rule is stated by Parke, B., in Sorsbie v. Park, 12 M. & W., 157, in this way: “Suppose there were a covenant with A. and B. jointly, that a certain thing should be done by the covenantor; both of those persons must sue. But where it appears upon the face of the deed that A. and B. have several interests, they must sue separately; for though the words be prima facie joint, they will be construed to be several, if the interest of either party appearing upon the face of the deed shall require that construction.” In Serg. Williams’ note to Eccleston v. Clipsham, 1 Saund., 154, it is said: “So though a man covenant with two or more jointly, yet if the interest and cause of action of the covenantees be several and not joint, the covenant shall be taken to be several, and each of the covenantees may bring an action for his particular damage, notwithstanding the words of the covenant are joint.” See also, Thomas v. _, Styles, 461; Haddon v. Ayres, 28 N. S., 105; Keightley v. Watson, 3 Ex., 716; Withers v. Bircham, 3 B. & C., 254; Servante v. James, 10 B. & C., 410; James v. Emery, 8 Taunton, 245; Carthrae v. *444 Brown, 3 Leigh, 98; Ernst v. Bartle, 1 Johnson’s Cases, 319; Trustees v. Letcher, 1 Monroe, 11; Ludlow v. McCrea, 1 Wend., 228; Jewett v. Cunard, 3 Wood & M., 277. And that it is improper, as well at common law as under our code practice, for a party to be joined in a suit who has neither legal nor beneficial interest in its subject matter, ought not to require authorities in its support. At least the letter as well as spirit of our code leaves no doubt. The language of the section of Revised Statutes (5007), heretofore quoted, implies that where there is no unity of the interest there can be no joinder, and the positive provision of section 4993 is that an action must be prosecuted in the name of the real party in interest.
Unless, therefore, it be made to appear that R. W. Duncan had an interest in the subject of the plaintiff’s action, or in obtaining the relief demanded, or unless his presence was necessary .to a final disposition of the controversy between plaintiff and defendant, it is not easy to perceive how he could be a necessarjq or even a proper, party. This is not seriously claimed; nor can it be said that his presence was necessary in order to exclude him from an interest in the damages claimed because he had no interest to be excluded. To the contention that the defendant had the right to have him brought in so that the defendant’s entire liability might be determined in one action, it would seem enough to say that no practical result could have been obtained by bringing him in. If he were a party and no claim had been set up by him, his presence would have been at the best an idle ceremony; while if he had set up a cause of action for like damages with that of plaintiff, it would have made a distinct issue, introducing confusion into *445 the proceeding, and calling for a determination by the jury of separate claims for damage by one verdict. In no aspect of the case, as it seems to us, would substantial justice be advanced by the joinder of such separate actions. And if it should result that the defendant is compelled to answer a claim for damage to the stock of R. W. Duncan in another suit, his bad fortune may well be laid at his own door.
Perhaps an application to this case of ancient rules, in their strictness, might lead to a different conclusion, and probably cases may be found which sustain the judgment of reversal. The law, however, in this class of cases has been much modified by modern decisions. Our search has not disclosed any case which can be said to be on all fours with the one under consideration. But we think the principle of Langridge v. Levy, 2 M. & W., 518, affirmed in 4 M. & W., 336, is applicable. The father of the plaintiff bought of the defendant a gun for the use of himself and his sons, the defendant then falsely and fraudulently warranting the gun to have been made by N, and to be a good, safe, and secure gun, while in fact, as the defendant then well knew, the gun was not made by N, nor was it a good, safe or secure gun, but was made by an inferior maker, was bad, unsafe, dangerous and wholly unsound. The gun was purchased on the faith of the representations and warranty. The plaintiff, knowing of and confiding in the warranty, used the gun, which, owing to its bad construction, burst, thus greatly injuring the plaintiff. Held that the plaintiff (the son) could maintain the action, the defendant being-held responsible “for the consequences of his fraud whilst the instrument was in the posses *446 sion of a person to whom his representation was either directly or indirectly communicated, and for whose use he knew it was purchased. ”
, We think the demurrer to the petition was properly overruled by the common pleas. The judgment of the circuit court will, therefore, be reversed and that of the common pleas affirmed.

Judgment reversed.